The Honorable, the United States Court of Appeals for the First Circuit is now in session. All persons having any business before this Honorable Court may give their attendance and they shall be heard. God save the United States of America and this Honorable Court. Court is in session. Today's cases will be called as previously announced and times will be as allotted to counsel. The first case today is United States v. Dennis Ayala, Appeal Number 191936. Attorney Lee, please introduce yourself on the record. Good morning, Your Honors. My name is Jane Lee and I represent the defendant, Dennis Ayala. Good morning, Ms. Lee. Please feel free to proceed with your argument. Your Honors, in the present case, the district court committed clear error in determining drug quantity in this case and the resulting guideline. It's the government's burden to prove drug quantity by a preponderance of the evidence. It's the court's duty to find drug quantity. In this case, probation converted three amounts of cash to drug quantity. They converted $5,720 found in a safe to drug quantity. They converted a $5,000 bank withdrawal and a $3,300 bank withdrawal to drug quantity. Now, the last two bank withdrawals were converted to drug quantity because they were withdrawn on April 24th, April 26th, which was two days before a drug transaction in this case on April 26th. In the present case, the court could not find by a preponderance that both of these cash withdrawals were used to buy drugs on April 26th. And the court couldn't find that by a preponderance because both the defendant and government contested the drug quantity in this case. And the defendant didn't just contest the drug quantity, but he submitted evidence that the $5,000 withdrawal on April 24th, two days before the drug deal, was to pay his bail in the state case. He submitted evidence that his bail was paid on April 24th, the date of the withdrawal, that the amount of his bail was $5,000, the amount of withdrawal in this case, and that he repaid that bail to his stepdaughter who paid his bail. He submitted receipts from the state case so that that amount cannot be found by a preponderance in this case to be used to purchase drugs on the 26th. Moreover, in addition, there was another drug deal in this case, and it was on May 22nd, and the amount of that drug deal was $4,500. Now, the court attributed both withdrawals, the $3,300 and the $5,000, to the April 26th I'm sorry, probation, not the court. Probation attributed both withdrawals to the April 26th drug deal, but that's $8,300. And there's no evidence in this record that defendant's drug deals were that amount. The only other drug deal in the record was for $4,500. So, that adds to the argument that there's no preponderance here. That $5,000 was for bail, and defendant paid that $5,000 for bail, so you can't attribute that $5,000, you can't convert that $5,000 to drug quantity. And so, the court erred in finding that that was... Just to clarify one thing, was there any indication in the district court's ruling that the $5,000 was itself drug proceeds as opposed to money to use to purchase drugs? Your Honor, that's very interesting because probation said that these monies were used to purchase drugs on April 26th, but the court never makes any kind of finding except this. The court finds that all the defendant's drug money, all the defendant's money, all defendant's assets, they're all drug money. It's all drug money, all his assets are drug money. That's the court's finding. I guess you could answer my question, which is, one possibility is that the drug, that the $5,000 were used to facilitate what would be a subsequent purchase of drugs on the 26th. And you're saying that's implausible because the $5,000 was used to pay bail. But is it possible to find on this record that even if the $5,000 was used to pay the bail, the $5,000 came from a sale of drugs that was prior so that it was itself drug proceeds? Because I thought the district court may have been suggesting as much. Could you just address that point? I don't think the district court suggests that. The district court mentions the $5,000 once and he says that $5,000 was withdrawn on the day of the April 26 drug deal. That's all he says about it. And that's wrong actually. So he doesn't even say that. And there isn't any evidence in the record to say, oh, this is the profit from the drug deal that went before. There's no evidence in the record of that. What do you, Ms. Lee, what do you say? The court did express skepticism that the defendant would have, quote, such a substantial amount on hand for someone who's been on disability and then said, I don't see any way that this individual could have accumulated those sums of money with no employment and a disability benefit. It sounds like he was saying what Judge Barron was suggesting, that the judge was referring not necessarily to the intended use of the money, but rather to the source of the money in the first instance. I think he was saying that. I mean, I think he, but I think he says a lot more. I think he globally says that all of defendant's money is drug money, including these. And I don't think that's a valid- Five minutes remaining. That's not a finding of fact. That's not an inference based on- No, it's not a finding of fact. The question is, it's an inference from the evidence before the court. And what you've got to persuade us of is that that inference is not a reasonable inference under all the circumstances. Well, it's not a reasonable inferences under the circumstances, but I would say right off, it's not even an inference. It's an assumption because there is no, you don't have any, any evidence of where that money comes from, but it's not a reasonable inference because defendant, because once the court made this statement, then defendant went on to defend himself by submitting evidence that he had a $250,000 insurance proceeds that he banked in 2013. So, he had other money. He also went on to say that, you know, the judge talked about all his assets. His house was in trust. His house, he didn't purchase his house. He had, when he talks about all his assets, he's talking about two used snowmobiles, motorcycle and a truck that were purchased a long time ago. And those kinds of assumptions, those kinds of cannot be used to support specific conversion of specific amounts to drug quantity. You know, we're talking about relevant conduct here. It's got to be related to the course of conduct, the conspiracy in this case. You can't just go back this way and say, oh, everything's drugs. You got to go this way and say, he used to buy these drugs in this conspiracy with these people on this date. Could you, what's your authority for that? Because I don't think that's correct. I think if the court makes a supportable finding that the defendant's cash, and he had a considerable amount of cash, including cash in the safe, is drug money, that that would be enough to justify the enhancement. Well, your honor, under that theory that he doesn't have to connect it to the course of conspiracy, every dollar he has in the bank can be drug money. Every asset he has can be drug money under that theory. And I don't think this court wants to say that because way back in 1989, this court said, you know, we're not even going to address the speculative and remote possibility that courts will start converting houses and cars into drug money, into drugs quantity. I mean, we've never done that. We don't do that because it's got to pertain to the course of conduct in this case to be relevant conduct. Could you, you might want to address the alternative argument that even if this was error, even if the facts weren't enough to support the inference, the court independently seemed to it would have set the sentence at the same amount anyhow. Yes, the court did say that the court has a single sentence where the court says, you know, under either guideline under 30 or 28, I would have given him 108 months, but that's a post sentencing statement. And that statement follows two hearings, a hearing and a continued hearing where both where the defendant presented evidence, the court accepted it. Well, I mean, Martina says that when you use the wrong guideline range, it's prejudicial if the parties ground, anchor their sentencing arguments in the application of a certain guideline. And that guideline is the focal point of the hearing. And that's exactly what happened here. And it's the government's burden to prove that this error was harmless. And they can't prove that based on a single post sentencing statement. I mean, if that was the case, he didn't have to decide drug quantity. He could have said, yes, I'll go with the plea agreement. The plea agreement was for a base offense level of 28 and then sentence him to 108. But this sentence, this post sentencing sentence just insulates his findings from appellate review. And that's not what the court intended, the Supreme Court intended. Is it a bit more than a single sentence? He also said, I have carefully considered the advisory guideline range. I give the guidelines no controlling weight. He then went into the 3553 A factors. And then at the end of that, he uttered the sentence that you referred to. Well, I think those that I give the guidelines no controlling. I mean, that's for any sentencing. That's how I read it. He would say that for any sentencing. Yes, you consider it. Three fifty five factors. You do this. This is how you proceed with sentencing. And then you set the guidelines, which is to ask you a practical question. If a district judge says I'd give him the same sentence. What is the point of remanding to that district court when he's told us what he's going to do if we conclude that it's a different range? I don't think there is any point in remanding to that judge. I think you have to remand it to a different judge. What's your authority to that last proposition that when there's a guideline error, we have to give it to a different judge. We don't ordinarily give it to a different judge. You don't ordinarily give it to a different judge. But in this case, I think that that given this case and the way it plays out, that this judge will be unable to be neutral and fair. Thank you, Ms. Lee. Are there any more questions? Thank you. Thank you. Attorney Lee, you can mute your device at this time. And Attorney Falk, if you could unmute your device. And introduce yourself to the record, please. Thank you. Good morning, your honors. I'm Noah Falk, and I represent the United States of America in this matter. So, I'll start where the court left off in the last argument. Although we firmly believe that the court was correct in its guideline calculation, the reality is that any error that may have occurred in the guideline calculation would be harmless because, as the court pointed out, the district court affirmatively stated that its sentence was untethered from the guidelines. The court went through and identified the various factors that it was relying upon in imposing its 108-month sentence. The court stated that the appellant was a long-term drug dealer starting at the age of 29. He was a career dealer. He continued to be involved in dealing drugs through the president at that time. He was 51 years old. He continued to deal drugs even after his arrest in the instant case. He had no intention of obeying the law, no respect for law, and the only way in the district court's view to prevent him from engaging in further drug trafficking was to impose a lengthy sentence. The court recited his drug level, or his, I'm sorry, his offense level findings, which was level 30, and noted that the guideline range would be 108 to 135 months in that case. He also said that the guideline range that the appellant argued for, level 28, which would have yielded an 87 to 108 months if he had found that range, I'm sorry, in short, he concluded with, in my view, the 108 months is appropriate under either set of circumstances, and that's in the record docket 223 at page 9. Now, the appellant attacks the court's sincerity. I mean, he essentially says that the reason that the court should disregard the district court statement that he would have is that a lot of the sentencing proceeding was devoted to determining the drug calculation. Well, the district court has a duty to find the correct guidelines range, and that's what the court did. Now, if the court had failed to do so, that would have been procedural error, as the court recognized in U.S. v. Tavares, but so the court took its obligation seriously. It afforded due process to the appellant. It found the guidelines range, and then it imposed a sentence that was untethered from that range based on its review of the record. So even if the court was wrong in its assessment of the guidelines range, which we think that it was not, that error didn't result in a different sentence, and so it's a harmless error. Apart from that, the court correctly calculated the guidelines range. There was plenty ... Well, look, let me just go back to the correct analytical framework here that governs this case. I think it was announced by this court in U.S. v. Sear, that's at 337 F 3rd 96. It's a case that is not cited by the appellant. That case indicates that the court can rely on the PSR at sentencing, and the defendant can challenge any assertions in the PSR with evidence or proffers, and if as a result of the defendant's challenges there arises a genuine and material factual dispute, the court is then obliged to resolve that on the record. But if the defendant's objections are merely rhetorical and unsupported by countervailing proof, the court may continue to rely on the facts in the PSR, and that's exactly what happened here. Counsel, take the $5,000 found in the safe. Judge Cata, I just, I'm not sure Judge Sellier is still ... Yeah, I'm here. Oh, you are? Okay. I'm just being unaccustomedly quiet. Okay, your video went off. Sorry about that, Judge Cata. There we go. So take the $5,000 in the safe. What in the record do you point us to that would suggest that that $5,000 came from drug dealing instead of from the $250,000 he'd previously received? I think you have to admit it could be either, so what makes the drug dealing more probable? Well, your honor, I think the best piece of evidence that ... Five minutes remaining. Thank you. That this $5,000 was the result of drug transactions and not money that came from the $250,000 windfall is that the appellant admitted that the $250,000 had been spent by the present day, and that's in the record in the continuation of the sentencing proceeding at pages three and four of that proceeding. It's docket number 223, pages three and four. The court asks, I've reviewed the bank records and I'm unclear where that money is at present, and the court is referring to the $250,000 windfall that the appellant received in 2013. The defense attorney, Mr. Mackey, replies, well, that money was used over a period of time, your honor, and then a little later on he says, in terms of where that money has gone over the years, that would be contained in the literally thousands of other pages that the defendant declined to provide to the court. The appellant is admitting that the legitimate source of income that he's trying to prove was already spent by the time that the instant conduct occurred, so then what you have left ... Can I follow up on that? I thought you just said that the judge asked, where's the money at present? Right. That's correct, your honor. But the $5,000 was supposedly spent on the bill not at present, but beforehand, so everything you just said about the money over time was spent is consistent with the idea that the $5,000 could have been part of that prior spending, right? No, your honor. I don't believe that that's what the appellant was meaning to say. This colloquy relates to the $250,000 windfall that the defendant received in 2013. And what I believe the court was trying to determine with respect to the $5,000 is, could this windfall be a part of the $5,000 supposed bail payment that was made in April of 2018? And I think what Mr. Mackey is saying here is that it couldn't have been because the $250,000 had been spent prior to the cash at issue. Really what the court wanted to know and why it continued the proceeding in order to permit the appellant to provide additional documentation and proof about this windfall is, can we trace the windfall from the time that it was paid in 2013 down to the present in order to refute the court's assumption that all the money that the appellant essentially said here was, we're providing you with documents that show that we received the windfall, but we aren't able to provide you with documents sufficient to trace the money to today because that money has been spent. And so the $5,000, whether or not it went to pay bail, it was drug proceeds. The appellant was a career dealer. He had no source of legitimate income apart from a modest social security allowance. And by the time the instant conduct occurred, the windfall was gone, even according to the appellant. And so I think the court was right to conclude that the majority... One thing that's just a little, to me, if the district court was basing the conclusion that the $5,000 was convertible as drug money, why is the district court, based on an idea that that $5,000 was proceeds of prior drug sales, why is the district court so concerned about connecting the timing of that withdrawal to the timing of the future drug purchase? To me, that suggests the district court was under the impression that it was drug money, at least in part, because it was going to be used to buy drugs. Well, Your Honor, I don't believe that it's an either or question. I believe it's a both and question. Yeah, but suppose if half of that is wrong and unsupportable, what do we then do? Well, I'm sorry, Your Honor, which half do you think is wrong? Well, the half that seems harder to support is the idea that it was withdrawn to purchase drugs, given that there's pretty good evidence that there was a $5,000 payment made around that exact same time to pay the bail in the state case. So, it seems at least 50-50 whether that $5,000 was being withdrawn for that purpose or for the future drug sale. And so, if the district court was under the impression that it was drug money that could be converted to drug quantity because of a future purchase and the I'm not quite sure what we do if the district court also sort of throws in this idea that with all proceeds. In other words, the district court seems to have both theories going with respect to this one payment. Half of that theory seems to me hard to support on a preponderance notion. Well, Your Honor, well, respectfully, I think that the only evidence that the appellant provided that that particular $5,000... That's time. May I just finish answering the question? You can finish your answer, yes, please. Thank you, Your Honor. The only... I'm sorry, I just lost my train of thought. The only evidence that the appellant provided that that particular $5,000 related to the bail payment was a receipt that indicated that bail was paid by a third party on that day and his own self-serving statements that that $5,000 withdrawal went to pay bail. The evidence that the appellant presented didn't show that that $5,000 was paid by the appellant. It was paid by a third party. So, I think even if this court finds that the district court was incorrect that that $5,000 was drug proceeds, the court could still find by a preponderance of the evidence that the $5,000 was connected to purchasing drugs. And I think that the operative thing for the court to keep in mind here is the clear error standard, right? When there's more than one plausible view of the circumstances, the sentencing court's choice among supportable alternatives cannot be clearly erroneous. And I think that's where we end up. Thank you, Mr. Falk. Judge Celia, Judge Barron, did you have any more questions? No. Thank you. Thank you, Your Honor. That concludes argument in this case. Attorney Lee and Attorney Falk, you can disconnect from the hearing at this time.